We'll turn to our next case, United States v. Medina-Mora. Mr. Shauf? Thank you. May I please the court? My name is Zach Shauf. I'm counsel for defendant Jose Medina-Mora. So today, Mr. Medina-Mora is serving a consecutive sentence, even though at his 2009 sentencing hearing, the district court sentenced him to, quote, a concurrent term of 77 months. Now, the government agrees in this case that the oral sentence would generally govern, but it says that Mr. Medina-Mora's can be ignored because it was ambiguous. That is wrong. The phrase concurrent term is as clear as it gets. It is, to start off, the opposite of a consecutive sentence. And the government does not even have a theory on how the sentence that Mr. Medina-Mora is serving today can be squared with the oral pronouncement, even though it admits that oral pronouncement is controlling. Remarkably, the only ambiguity that the government asserts here is an ambiguity in the extent to which Mr. Medina-Mora's sentence is concurrent. It says, well, you can have a sentence that's fully concurrent or partially concurrent with one of the two Illinois sentences he was then serving. First off, that is not even a start on justifying why Mr. Medina-Mora is serving a consecutive sentence today. And it speaks volumes, we think, about the government's position that this is the argument to which it must resort. Even on its own terms, moreover, we think this is wrong, too. There is no ambiguity on the extent to which this is a concurrent sentence. The ordinary meaning of the word concurrent, standing alone, is fully concurrent. The easiest place, I think, to see this is the relevant sentencing guideline. It's 5G 1.3, which, in cases like this, give the district court discretion to impose a sentence that's concurrent, partially concurrent, or consecutive. And that juxtaposition between concurrent and partially concurrent is unmistakable evidence that the ordinary meaning of the word concurrent is fully concurrent. We cite cases that use it this way, too. The Banabe case from this court, the LaPette case from the Eleventh Circuit, which is another Rule 36 case where the question is, is the sentence unambiguous? And the Eleventh Circuit says the ordinary meaning of the phrase concurrent, unmodified, means that it applies to all terms. We think that's exactly the case here. And in fact, at bottom, this is really just about common sense. So no reasonable observer would pick up the sentence that Mr. Medina-Mora received in 2009 and believe that it could be concurrent with just one of his two Illinois state sentences. For there to be a partially concurrent sentence, you have to have some designation of what part is concurrent and what part is not. There is none of that here. And the only way to understand the oral judgment as pronounced, which this court said in CFIS is controlling, is as a fully concurrent sentence. And for those reasons, we think Mr. Medina-Mora is entitled to a Rule 36 correction of his written judgment. Mr. Shoff, is he subject to an immigration detainer at this point? I'm not sure about the answer to that, Your Honor. Certainly, the district judge at sentencing contemplated that he might well be removed from the country immediately on his release. If we were to order him released next week, for example, what would happen? I'm not sure if there is a detainer in place. Certainly, he is subject to removal. How much are detainers honored? I don't know the answer to that question, Your Honor. Well, we know the answer to that question in San Francisco. Well, so I think what's important here, Your Honor, is that Mr. Medina-Mora is likely entitled to be out of prison today. And whether when that happens, he is removable, whether he ends up being removed or not. The only question in this case is, should he still be in prison? Should he get the Rule 36 amendment to which he is entitled? We think that this is a very clear case. Again, no one disputes the controlling rule here that the oral sentence generates. Let me ask you this. Suppose the district judge realized at the end of sentence, just as he was walking off the bench, he had made a mistake. He meant to say consecutive, but he said concurrent. Does he have any remedy? He absolutely does. So under Rule 35 of the Federal Rules of Criminal Procedure, mistakes in the judgment can be fixed. Any kind of mistake can be fixed within 15 days. So it might require, if this had happened after the defendant had left the courtroom, you might have to bring him back. But it's an easy problem to fix. It's 15 days. Likewise, the government, of course, was free to object if it thought that this was an incorrect or wrong sentence. It was free to bring an appeal. But 15 days is the issue. That's right. And at that point, the sentencing judge can just do a resentencing and effectuate whatever his real intent was. Is that an oral proceeding? I think it probably would have to be. The defendant does have a constitutional right to be present at sentencing. So if he leaves, I think you have to bring him back. But that, of course, is no great burden. What's happened here, though, is we have a case where none of that happened. The law told Mr. Medina-Mora that he was entitled to rely on the oral sentence. He did, and appears to have believed until 2013, or rather 2012, when he arrived in federal custody, that his federal sentence would be concurrent, as the district judge said it would. And these are exactly the kind of subtle expectations that the Double Jeopardy Clause protects, that under decades of this court's precedent, he was entitled to rely on his oral sentence. I'll say just one word about the district court's rationale here. Essentially, the district court denied the Rule 36 motion because he said, not that there was any ambiguity in the sentence, but just that the sentence he had pronounced was an error. And I think there's no dispute here that that reasoning is not tenable. This court was very clear in Eskridge and Zepeda that the oral sentence controls, even if in error, however erroneous. So at this point, we think both the legally required and the fair thing to do is to grant Mr. Medina-Mora the relief he sought under Rule 36. His oral sentence was unambiguous. He was entitled to rely on it, and he did. And I would also encourage this court, if it sees things our way in this case, to consider exercising this Rule 36 authority itself, as it did in the Nunez-Natividad case that we cite in our brief. Mr. Medina-Mora, again, may well be entitled to release immediately, and there's no reason for further delay that remand proceedings would entail. If the court has no questions, I'll reserve the balance of my time for rebuttal. Okay, thank you very much, Mr. Shaw. Mr. Harjani? Thank you. Good morning. May it please the court, Sunil Harjani for the United States. Your Honor, is the district court's denial of the Rule 36— You should have confessed error. Your Honor, there are a number of circumstances. No. The rule that the oral sentence controls, that's a very well-established rule. It's a simple rule. It's a sensible rule. Yes, Your Honor. You don't surprise a defendant months, years later and say, oh, you thought you were sentenced to X, only it's actually 10X. No, you mustn't do that. Were you the lawyer for the government? Yes, I was, Your Honor. Well, why? You were asleep at the switch. Your Honor, we could have done this better. You didn't hear him. Your Honor, it's been six years, and— Well, whatever it was, you didn't hear the judge correctly. We do not recall, Your Honor, what exactly occurred. Well, you must have thought. You must have missed the word concurrent, right? Your Honor, given the passage of time— What? Given the passage of time, I just don't recall what exactly happened at that sentencing. Well, what would have happened that led you to say nothing? Your Honor, I don't know. I really can't answer that. He says concurrent. You didn't hear it? I just don't recall, Your Honor. That's the— The transcript's clear, right? The transcript is clear about the use of the term concurrent, but it doesn't say what it's concurrent with. And I think the context— What difference would that make when you're standing there? It wouldn't— You think that because it doesn't—what? Well, the judge didn't say what it was concurrent with, so fine. I'm not going to say anything. No, I wasn't suggesting that standing there, that was an issue. What we are suggesting, Your Honor, is that looking at this court's precedents— Look, this rule about the oral sentence, this is a simple, well-established rule. All it requires is the assistant U.S. attorney to keep his ears open. Yes, Your Honor. So why should we complicate the law with all this lapse of time because you weren't listening? If I may point out, Your Honor, this circuit precedent has been to give the district court an opportunity to say what it meant by using a term. For example— And how much time later, right? That is— So a person doesn't know what his sentence is. Right. The written judgment— He never finds out what his sentence is. Right, but the written judgment did come out— Well, what sense does that make? Why do you need a rule like this? All you need is for the assistant U.S. attorneys to pay attention during the sentencing hearing. Yes, Your Honor, and we certainly regret that situation. Well, why should you—well, then, you have to live with your mistakes. You don't listen, then you don't get the sentence redone. I think in part, Your Honor, if I may respond, is that because the term was used out of context, it wasn't requested by the defendant, it wasn't discussed in the briefs, it wasn't discussed by the district court at all in its sentencing rationale under 3553A. It came sort of out of the blue, almost out of nowhere, without reference to anything else. And in cases like Zepeda, where a defendant got 150 months, but the written judgment said 210 months, this court has preferred to give the district court an opportunity to explain what the sentence really was. Isn't it correct, counsel, the 77 months was way over the guideline range, right? It was over the ultimate guideline range, yes. Yes. So, I mean, if the judge had gone with the guideline range and consecutive to the state sentence, it would be about the same, wouldn't it? If it had gone with the original guideline range, the 77 to 96, Your Honor? No. The 33 to 41. The calculated guideline range, consecutive to the state sentence? Yes. That would be about where we are now, right? That would be about where we are now, yes, Your Honor. So, okay. Is there a detainer on the defendant? Yes, we believe so, and that means he will be deported. You know or believe? If my memory serves me correct, I know, but I will double check as soon as this hearing is done and ensure that it is there. It should automatically be put into place. Where is he in custody right now? That I do not know, Your Honor, which BOP facility, but I believe the defense knows, certainly. Thank you. Would you mind indicating for sure that there is a detainer on him? Yes, I will do so. As soon as possible? Yes, we will do so.  Yes, we'll do so. Okay. Thank you, Your Honor. Thank you very much, Mr. Harjo. Mr. Shaw, do you have anything further? So, I'm just going to answer this court's question about where the defendant is currently detained. He is currently at USP Atwater out in California. It's a federal correctional institution. That's the answer to that question. Unless the court has anything further, we are prepared to submit. We'd ask this court to exercise its authority under Rule 36 or any alternative remand directions to do so. Okay, thank you. You were appointed, were you not? I was. I'll take your efforts on that.